IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA,      *
                               *
            Plaintiff,         *
                               *
                               *
vs.                            *        No. 4:05cr00190 SWW
                               *
                               *
                               *
                               *
MARIO FUDGE,                   *
                               *
            Defendant.         *

<u>MEMORANDUM AND ORDER</u>

Defendant Mario Fudge is charged in a two-count indictment with conspiracy to possess stolen firearms in violation of 18 U.S.C. § 371 and 18 U.S.C. § 922(j), and possession of one or more firearms, having previously been convicted of a crime, in violation of 18 U.S.C. § 922(g)(1).  The issue before this Court is defendant's competency to stand trial.


I.

On January 23, 2006, appointed counsel for defendant filed a notice of intent to raise an insanity defense and requested that this Court allow defendant to be examined pursuant to 18 U.S.C. § 4241 to determine defendant's competency to proceed [doc.#20].  By Order entered January 25, 2006 [doc.#21], and again on March 23, 2006 [doc.#22], this Court ordered that a psychiatric or psychological examination be conducted on defendant to determine whether or not defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to understand the nature of the proceedings against him or properly assist in his own

defense, and to determine his competency at the time of the alleged offense.[1]

The evaluation of defendant took place at the Federal Bureau of Prisons ("BOP"), Metropolitan Detention Center, Los Angeles, California, and was conducted by Forensic Psychologist Maureen Burris, Ph.D and reviewed by Chief and Forensic Psychologist Ralph Ihle, P.h.D.  On September 18, 2006, the BOP provided its report of the forensic evaluation of defendant.  Review of this report prompted defense counsel to move ex parte for the appointment of an independent psychiatric examination and expert testimony.  This Court, having also reviewed the BOP's report, conducted an ex parte telephone proceeding pursuant to 18 U.S.C. § 3006A(e)(1) to address defense counsel's motion for the services, which totaled $7,000.00, as well as defendant's competency to stand trial.   In light of this Court's concern with defendant's competency, defense counsel agreed to the unsealing of his ex parte motion and to a telephone conference on the motion with the government present.

On November 17, 2006, this Court held a telephone conference with both the government and defense counsel to address defense counsel's motion for the appointment of an independent psychiatric examination and expert testimony as well as defendant's competency.  At the conclusion of the hearing, this Court stated that it would not rule on defense counsel's motion at that time but, at the request of the government, would schedule a hearing on defendant's competency.  The government stated it would secure for the hearing the presence of the BOP evaluators that prepared the report but requested additional time in which to assess the matter. This Court granted the government's request.  Subsequently, on November 27, 2006, the

---

[1] A second Order was required as there was a delay in transporting defendant to the facility designated to conduct the examination.  Apparently, defendant was in state custody and the state would not release him because of scheduled court appearances.

2

government filed a waiver of competency hearing [doc.#36], stating that it did not object to this Court's entry of a finding regarding defendant's competency based on the BOP's September 18th forensic evaluation.  Accordingly, it is the issue of defendant's competency to which the Court now turns.

II.

A criminal defendant may not be tried unless he is competent.  *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  A defendant is mentally incompetent to stand trial when he is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  The test for a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).  *See also United States v. Jimenez-Villasenor*, 270 F.3d 554, 559 (8th Cir. 2001); *Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996).[2]  If a court decides that a defendant is incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General" and the "Attorney General shall hospitalize the defendant for treatment ... for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the trial to proceed...."  18 U.S.C. § 4241(d), (d)(1).  *See also United States v. Ferro*, 321 F.3d 756, 760-

---

[2] The *Dusky* standard for competency to stand trial applies equally to competency to plead guilty.  *United States v. Martinez*, 446 F.3d 878, 881 (8th Cir. 2006) (citing *Godinez*, 509 U.S. at 398).

61 (8th Cir.), *cert. denied*, 540 U.S. 878 (2003).  The standard of proof for a finding of

incompetence under § 4241 is by a preponderance of the evidence.  *Id.* at 760.[3]


1.

The BOP evaluators found that defendant, a 23-year-old male, is in the "extremely low

range of intellectual functioning as compared to his age peers" with an  Intelligence Quotient

(IQ) of 54.  Defendant's verbal and nonverbal reasoning abilities were both found to be in the

"extremely low range," and his lowest scores were obtained in the area of social common sense,

attention to detail, and anticipating consequences.  Defendant was given a primary diagnosis of

Borderline Intellectual Functioning and a Rule-Out of Mild Mental Retardation.[4]

The evaluators concluded that defendant, despite his limited cognitive functioning, had

an awareness of the nature, quality, and wrongfulness of his actions during the time period of the

offense but that he has a "marginal" ability to understand the legal proceedings and a "marginal

ability to properly assist counsel in his defense."  In general, concluded the evaluators, defendant

"demonstrated an inadequate understanding of court participants and related procedures" and

"did not understand the different roles of courtroom personnel such as the attorney, judge, jury,

witnesses, and prosecuting attorney."  In this respect, defendant was not sure of his lawyer's

---

[3] If it becomes apparent that the defendant will not attain sufficient capacity to proceed to trial, a "dangerousness hearing" is conducted in accordance with the provisions of 18 U.S.C. § 4246 to determine if the defendant would pose a "substantial risk of bodily injury to another person or serious damage to property of another" upon release. *See id.* at 761.

[4] The evaluators acknowledged that defendant was evaluated for a disability determination by the Social Security Administration in August 2003 and diagnosed with mild mental retardation.  The evaluators opined, however, that the 2003 evaluation "appeared to rely only upon the defendant's self report in assessing areas of adaptive function" and that "there was minimal objective data regarding his overall functioning."  The evaluators noted as well the diagnostic requirement that the onset of mental retardation must occur before the age of 18 and that none of the extensive educational records that were available for review included a diagnosis of mental retardation for defendant.

name and described him as, "He's an old dude, I think his name is Sam." The evaluators noted

that defendant was not aware of whether he was charged with a felony or a misdemeanor and

that he "had a limited grasp of the consequences" for the various pleas he could enter in court.

The evaluators further observed that defendant's "ability to realistically appraise various

defense strategies, and make informed decisions based on these appeared inadequate." Indeed,

when asked how he could be defended against the charge, defendant stated, "'[say that] I didn't

do it.'" When asked what he could do if someone told a lie about him on the stand, defendant

replied, "My mom comes to court," and "suggested that his mother would handle the situation."

The evaluators determined that defendant's "understanding of the sophisticated legal

process, and his ability to contribute to his defense is impaired, due to his limited cognitive

functioning."[5] The evaluators did, however, state that "[t]here is evidence to suggest that

[defendant] is capable of learning about the legal process if he is offered instruction that is

individualized, repetitive, and in concrete, simple terms," and recommended that defendant's

counsel undertake this task.

2.

Based on the foregoing, this Court finds by a preponderance of the evidence that

defendant does not have "sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding" and that he thus does not meet the test for a defendant's

competency to stand trial. *Dusky*, 362 U.S. 402. The findings of the BOP evaluators established

---

[5] The evaluators noted that it may seem unusual that an individual has an appreciation for the nature, quality, and wrongfulness of his actions, yet have a marginal ability to understand the legal proceedings and assist in his defense, explaining that "[t]his apparent congruence may be explained by the nature of [defendant's] cognitive limitations."

that defendant suffers from borderline intellectual functioning and that he demonstrated an inadequate understanding of court participants and related procedures, did not understand the different roles of courtroom personnel, lacked an adequate ability to realistically appraise various defense strategies and make informed decisions based on these, and had an impaired ability to contribute to his defense due to his limited cognitive functioning.  Without the defendant's ability to appreciate and weigh information and advice, counsel cannot effectively fulfill his role as counselor.  *United States v. Salley*, 246 F.Supp.2d 970, 977 (N.D.Ill. 2003).[6]

It may be, as noted by the evaluators, that defendant's present impaired ability to contribute to his defense is capable of being remedied with individualized and repetitive instruction.  Even if that is so, however, this Court "does not have the discretion, prior to a reasonable period of hospitalization in the custody of the Attorney General, to determine whether the defendant will likely attain the capacity to stand trial."  *Ferro*, 321 F.3d at 761.  Rather, upon an initial finding of incompetency, which this Court has now made, § 4241(d) requires commitment to the Attorney General, who "'shall hospitalize the defendant ... as is necessary' to determine whether the defendant's condition will improve."  *Id.*

### III.

For the foregoing reasons, this Court, pursuant to 18 U.S.C. § 4241(d), commits defendant Mario Fudge to the custody of the Attorney General to be hospitalized in a suitable facility for a reasonable period of time, not to exceed four (4) months from the date of entry of

---

[6] The evaluators contacted defendant's counsel regarding observations of his client, and counsel related having difficulty with defendant, noting that defendant did not appear to grasp the seriousness of the charges and appeared to be in denial.  Overall, noted the evaluators, defendant "does not appear to understand complex legal concepts, and hinders his assistance to [counsel] by giving inaccurate information regarding possible witnesses."

this Memorandum and Order, to determine whether there is a substantial probability that, in the foreseeable future, the defendant will attain the capacity to stand trial.  This Court directs that as soon as practicable following the treatment to be administered defendant, the Attorney General provide this Court with a report on whether the treatment has restored defendant to competency.

IT IS SO ORDERED this 4th day of January, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE